1  Thomas D. Rutledge (SBN 200497)
2  Attorney-at-Law
   3555 Fifth Avenue, Suite 201
3  San Diego, California 92103
   Telephone:  (619) 886-7224
4  Facsimile:   (619) 259-5455

5

   Attorneys for Plaintiffs
6

7                    UNITED STATES DISTRICT COURT

8               SOUTHERN DISTRICT OF CALIFORNIA

9
   DONOVAN LONG and LLOYD                )
10 CONARD, individuals, individually and on )   U.S. District Court Case No.: 14CV1246
   behalf of themselves and others similarly )   JLS BGS
11 situated,                              )
                                          )   **PLAINTIFFS' MEMORANDUM OF**
12                                        )   **POINTS AND AUTHORITIES IN**
                Plaintiffs,               )   **SUPPORT OF MOTION FOR**
13                                        )   **PRELIMINARY APPROVAL OF**
                                          )   **CLASS SETTLEMENT**
14 vs.                                    )
                                          )   Judge:          Hon. Janis L.
15 STANLEY BLACK & DECKER INC.,           )                   Sammartino
   STANLEY ACCESS INC., STANLEY           )   Magistrate Judge: Hon. David H. Bartick
16 SECURITY SOLUTIONS, INC.,              )   Dept.:          Courtroom 4A
                                          )   Complaint Filed: June 27, 2013
17 STANLEY CONVERGENT SECURITY            )   Trial Date:     NA
   SOLUTIONS, INC., AEROSCOUT, INC.,      )
18 BLACK & DECKER (U.S.) INC., CRC-       )   Hearing Date:   October 30, 2014
   EVANS PIPELINE INTERNATIONAL,          )   Hearing Time:   1:30 p.m.
19 INC.,  EMHART TECHNOLOGIES LLC,        )   Dept.:          Courtroom 4A
20 FASTENER INNOVATION                    )
   TECHNOLOGY, INC., LISTA                )   **[Declaration of Juan Garza, Declaration**
21 INTERNATIONAL CORPORATION,             )   **of Thomas D. Rutledge, Declaration of**
22 POWERS FASTENERS, INC.,                )   **Jim Tallaksen, and Notice of Motion and**
   SPIRALOCK CORPORATION,                 )   **Motion filed concurrently herewith]**
23 STANLEY FASTENING SYSTEMS, LP,         )
24 STANLEY SUPPLY & SERVICES, INC.,       )
   STANLEY ACCESS TECHNOLOGIES            )
25 LLC, and DOES 16 through 50 inclusive  )
                                          )
26                                        )
                                          )
27              Defendants.               )
                                          )
28 _____    )

# TABLE OF CONTENTS

Page(s)

I.      INTRODUCTION                                                              1

II.     THE PARTIES                                                              2

III.    PROCEDURAL POSTURE                                                       3

IV.     REASONS FOR SETTLEMENT                                                   6

V.      THE SETTLEMENT MEETS ALL CRITERIA NECESSARY FOR
        PRELIMINARY APPROVAL                                                     9

VI.     THE CLASS MAY BE CERTIFIED FOR SETTLEMENT
        PURPOSES

VII.    THIS SETTLEMENT IS FAIR, REASONABLE AND IN THE BEST
        INTEREST OF THE CLASS                                                   20

VIII.   CONCLUSION                                                              29

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, Suite 201
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

- i -

# **Table of Authorities**

**CASES**

*Antonopulos v. North American Thoroughbreds, Inc.*,
    1991 WL 427893 (S.D. Cal. May 6, 1991) ........................................................25

*Alberto*,
    252 F.R.D. 652, 665 (E.D. Cal. 2008) ................................................21

*Bellows v. NCO Fin. Sys., Inc.*,
    No. 3:07-cv-01413-W-AJB, 2008 WL 5458986 (S.D. Cal. Dec. 10, 2008) .....11

*Boyd v. Bechtel Corp.*,
    485 F. Supp. 610 (N.D. Cal. 1979) ................................................11

*Cervantez v. Celestica Corp.*,
    2010 WL 2712267 (C.D. Cal. July 6, 2010) ........................................25

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ........................................................9

*EEOC v. Kovacevich "5" Farms*,
    2007 U.S. Dist. LEXIS 32330 (E.D.Cal. April 18, 2007) ................................15

*General Tel. Co. of Southwest v. Falcom*,
    457, U.S. 147, 156 ........................................................17

*Gentry v. Superior Court*,
    42 Cal. 4th 443 (2007) ........................................................20

*Glass v. UBS Financial Services, Inc.*,
    331 Fed. Appx. 452 (9th Cir. 2009) ................................................17

*Gribble v. Cool Transports, Inc.*,
    2008 WL 5281665m (C. D. Cal. Dec. 15 2008) ........................................11, 13

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................passim

*In re Cellphone Fee Termination Cases*,
    186 Cal. App. 4th 1380 (2010) ................................................24

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, Suite 201
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

*In re Heritage Bond Litig.,*
    2005 WL 1594403 (C.D. Cal. June 10, 2005) ...........................................25, 26

*In re M.D.C. Holdings Sec. Litig.,*
    1990 WL 454747 (S.D. Cal. Aug. 30 1990) ...................................................25

*In re Mego Fin. Corp. Sec. Litig.,*
    213 F.3d 454 (9th Cir. 2000)...................................................................11, 24, 25

*In re Pacific Enterprises Securities Litigation,*
    47 F.3d 373 (9th Cir. 1994)...................................................................26

*In re Public Ser. Co. of new Mexico,*
    1992 WL 278452, at *1, *12 (S.D. Cal. July 28, 1992) ...................................25

*Jimenez v. Domino's Pizza, Inc.,*
    238 F.R.D. 241 (C.D. Cal. 2006) ...................................................................20

*Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,*
    244 F.3d 1152 (9th Cir.2001)...................................................................19

*Jordan v. County of Los Angeles,*
    669 F.2d 1311 (9th Cir. 1982), vacated on other grounds, 459 U.S. 810, 103
    S. Ct. 35, 74 L. Ed. 2d 48 (1982) ...................................................................15

*Justice v. Civil Service Commission,*
    688 F.2d 615 (9th Cir. 1982) ...................................................................12

*Linney v. Alaska Cellular P'ship,*
    1997 WL 450064 (N.D. Cal. July 18, 1997)...............................................13

*Louie v. Kaiser Found. Health Plan, Inc.,*
    2008 U.S. Dist. LEXIS 78314 (S.D. Cal. 2008) ......................................9, 10

*Miletake v. Allstate Ins. Co.,*
    2010 WL 809579 (N.D. Cal. March 05, 2010)...........................................15

*Otsuka v. Polo Ralph Lauren Corp.,*
    251 F.R.D. 439 (N. D. Cal. 2008) ...............................................................19, 20

*Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.,*
    323 F.Supp. 364 (E.D. Pa. 1970)...............................................................10

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, Suite 201
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

iii -

re *Activision Securities Litigation*,
    723 F.Supp. 1373 (N.D. Cal. 1989) .................................................26

re *Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994).......................................................26

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009).......................................................12

*Slaven v. BP Am., Inc.*,
    190 F.R.D. 649 (C.D. Cal. 2000) ..................................................15

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003).....................................................9, 17

*Van Vranken v. Atlantic Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995)................................................24

*Vasquez v. Coast Valley Roofing, Inc.*,
    670 F. Supp. 2d ...................................................................22

*Village, LLC v. General Electric*,
    361 F.3d 566 (9th Cir. 2004).......................................................12

*Vincent v. Hughes Air West, Inc.*,
    557 F.2d 759, 769 (9th Cir. 1977) .................................................25

*Vinole v. Country Home Loans, Inc.*,
    571 F.3d 935 (9th Cir. 2009).......................................................19

**STATUTES**

California Labor Code Section 1174 (9) .................................................3

Section 11.24 ........................................................................10, 11

**OTHER AUTHORITIES**

4 Conte & Newberg, *Newberg on Class Actions*, §11.26 (4th Ed. 2002)
    (hereinafter "*Newberg on Class Actions*")...................................10, 11

E.D. Cal. 2008.........................................................................21

F.R.C.P. Rule 23(a)..............................................................14, 15, 16

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, Suite 201
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

Fed. R. Civ. P. 23 (c)(2)(B) ................................................................22

Fed. R. Civ. P. 23(e)(1)(A) ..................................................................9

Fed.R.Civ.P. 23(e)(2)........................................................................11

Rule 23(e) of the Federal Rules of Civil Procedure ...........................29

Rule 23 ........................................................................................14, 17

Rule 23(a)...............................................................................15, 16, 18

Rule 23(a)(1) ...................................................................................15

Rule 23(a)(2) .............................................................................15, 16

Rule 23(a)(4) .............................................................................17, 18

rule 23(b)(3) ....................................................................14, 15, 18, 19

Rule 23(g) .......................................................................................18

Wage Statement Class, and (2) ...........................................................1

**SUSPECTS**

§11.41, p. 11-87 .................................................................................9

§ 30.44.......................................................................................10, 12

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, Suite 201
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

Plaintiffs Donovan Long and Lloyd Conard ("Plaintiffs"), on behalf of themselves and acting for the interests of other current and former employees ("Represented Employees"), and all other similarly situated individuals (cumulatively "Plaintiffs") submit this Memorandum of Points and Authorities in support of Plaintiffs' unopposed Motion for Preliminary Approval of Class Settlement.

On June 27, 2013, Plaintiffs filed a class action on behalf of two subclasses: (1) a Wage Statement Class, and (2) a Field Technician Class. After a significant amount of informal discovery, including the review of over 10,000 pages of pay data, time records, etc., and a full day mediation with Mark Rudy, Esq., the parties have reached a full and final settlement, the terms of which are contained in the Joint Stipulation of Class Action Settlement and Release Agreement ("Settlement Agreement"), filed concurrently with the Court. By this Motion, Plaintiffs seek preliminary approval from the Court of the Settlement Agreement[1], a copy of which is attached as Exhibit "1" to the Declaration of Thomas D. Rutledge ["Decl. Rutledge"], filed concurrently with this Motion, conditional certification of the Settlement Class, and approval of the Preliminary Approval Order scheduling Final Approval of the Class Settlement.

The proposed settlement is fair and reasonable, and the Court should preliminarily approve the Settlement. Rutledge Decl., ¶¶ 4-7; 35-56; Decl. of Juan Garza ¶ 36.

## II.      THE PARTIES

### A. The Named Plaintiffs

Plaintiffs Donovan Long and Lloyd ("Skip") Conard worked primarily in the San Diego, California region (sometimes neighboring counties) in the field as construction workers. Rutledge Decl., ¶ 8. Plaintiffs performed highly skilled manual

---

[1] Capitalized terms in this Memorandum have the same meaning as contained in the Stipulation and Settlement Agreement, which terms are incorporated herein.

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, Suite 201
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

1  labor doing primarily construction work in the form of door assembly. *Id.*, ¶ 9.

2  Plaintiffs were non-union, non-exempt employees and were paid weekly on an hourly

3  basis. *Id.*, ¶ 10.

4      **B.**    **The Named Defendants**

5      Defendant Stanley Black & Decker, Inc. (Defendant Stanley Black & Decker,

6  Inc. or "DEFENDANT EMPLOYER") is an S&P fortune 500 Company headquartered

7  in New Britain, Connecticut. Rutledge Decl., ¶ 11. During the class period, Defendant

8  Stanley Black & Decker, Inc. was the parent company of Defendants Stanley Access,

9  Inc., Stanley Security Solutions, Inc., Stanley Convergent Security Solutions, Inc.,

10  Aeroscout, Inc., Black & Decker (U.S.) Inc., CRC-Evans Pipeline International, Inc.,

11  Emhart Teknologies, LLC, Fastener Innovation Technology, Inc., Lista International

12  Corp., Powers Fasteners, Inc., Spiralock Corp., Stanley Fastening Systems, LP,

13  Stanley Supply & Services, Inc., and Stanley Access Technologies, LLC (collectively

14  "Defendants"). *Id.*, ¶ 12.

15      **C.**    **The Putative Class**

16      This wage and hour class action consists of two Subclasses.

17  Subclass I (Field Technician class) is defined as:

18          "All nonexempt persons employed by or have been employed

19          by Defendants as a Field Technician and/or Service Technician

20          and/or Installation Technician and/or Installation Technician

21          Helper and/or who hold or held similar positions who worked

22          in the field doing construction, technical, and/or maintenance

23          work in the State of California from June 27, 2009 to the

24          present and who did not receive all of their wages as required

25          by California law."

26  Subclass II (Wage Statement class) is defined as:

27          "Any individual who was employed by any of the Defendants

28          in the State of California at any time from June 27, 2012 to the

- 2 -

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, Suite 201
San Diego, California 92103
Telephone (619) 886-7224
Facsimile: (619) 259-5455

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, Suite 201
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

date of the hearing on the Court's preliminary approval of this

Settlement Agreement who received at least one paystub from

any of the Defendants."

See Rutledge Decl., ¶ 3 [**Exhibit 1**]; all members of the two Subclasses will be

referred to as the "Class" or "Class Members."

## III.   PROCEDURAL POSTURE

On June 27, 2013, Plaintiffs filed a Complaint in state court instituting a wage

and hour class action.[2]  Rutledge Decl., ¶ 13. The operative Complaint alleges 11

causes of action: (1) failure to provide compensable drive time, (2) failure to pay

overtime wages, (3) failure to pay minimum wages, (4) failure to provide meal

periods, (5) failure to provide rest periods, (6) failure to make payments within the

required time, (7) failure to provide compliant itemized wage statements, (8) failure to

maintain required records in violation of California Labor Code Section 1174 , (9)

failure to pay prevailing wages, (10) remedies under the Private Attorney General Act

("PAGA"), and (11) unfair business practices. *Id.*, ¶ 14. Defendants filed a timely

Answer denying each of the allegations asserted in the litigation and asserted that it

has no liability for the claims of named Plaintiffs or the Class. *Id.*, ¶ 15.

Plaintiffs propounded a substantial amount of written discovery after suit was

filed, but received objections to many of the discovery requests. Rutledge Decl., ¶ 16.

As a result, the Parties spent an extensive amount of time engaging in meet and confer

conferences and in drafting and preparing for discovery motions. *Id.*, ¶¶ 17-19. In

December 2013, Plaintiffs served ADP Payroll Processing Inc. with a third-party

subpoena to obtain Class Members' payroll records, among other things. *Id.*, ¶ 20. The

records sought in this subpoena were designed to identify class members and bolster

Plaintiffs' paystub claims. *Id.*, ¶ 21. Defendants, however, filed a Motion for a

---

[2] The Complaint was initially filed by David Horn on June 27, 2013.  On January 27, 2014, Donovan Long and Lloyd Conard were added as named plaintiffs in this action.  On September 2, 2014, David Horn individually settled his claims (which included an alleged wrongful termination claim) with Defendants and requested to be dismissed as a named plaintiff from the instant class action case.

1    Protective Order and the deposition of ADP was postponed pending a hearing on

2    Defendants' motion. *Id.*, 22.

3         In December 2013, Plaintiffs propounded written discovery on newly

4    discovered Defendants, and again received boilerplate objections. Rutledge Decl., ¶

5    23. From about December 2013 to January 2014, Plaintiffs met and conferred with

6    Defendants about the deficient discovery responses, but to no avail. *Id.*, ¶ 24. Thus,

7    Plaintiffs reserved a hearing date for more than a half dozen motions to compel and

8    began preparing moving papers to this end. *Id.*, 25.

9         On January 10, 2014, the parties appeared for a CMC. Rutledge Decl., ¶ 26.The

10   parties agreed to continue the CMC to conduct more discovery and give the parties

11   time to mediate this case. *Id.*, ¶ 27. The parties stipulated to continuing the CMC and

12   three motions to June 20, 2014. *Id.*, ¶ 28.

13        On January 27, 2014, Plaintiffs (via David Long and Lloyd Conard) thereafter

14   filed a First Amended Complaint ("FAC") adding two new state claims for prevailing

15   wages and failure to maintain payroll records. Rutledge Decl., ¶ 29. These claims

16   predominantly addressed the claims alleged by the construction worker subclass

17   (Subclass I). *Id.*, ¶ 30.

18        On May 19, 2014, Defendants' filed a Notice of Removal to this Court.

19   Rutledge Decl., ¶ 32; see also Court File. On May 28, 2014, the parties appeared for

20   mediation in San Francisco before Mark Rudy, Esquire. Rutledge Decl., ¶ 33. Prior to

21   the mediation, which took place on May 27, 2014, the parties engaged in significant

22   informal discovery, which included the following production by Defendants to

23   Plaintiffs, as requested:

24        • Plaintiffs' personnel files, payroll records and wage statements;

25        • W-2s, payroll records (and certified payroll records for individuals who

26            worked on prevailing wage jobs during the sampled time period), wage

27            statements and time records for a one month period of time for a

28            mutually agreed upon sample of 37 individuals;

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, Suite 201
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

- 4 -

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, Suite 201
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

- Handbooks and additional policies applicable to the claims associated with the non-exempt service technicians who primarily work/ed in the field and were provided with company vehicles from June 27, 2009 to the present for Stanley Access, Inc.,  Stanley Convergent Security Solutions, Inc. and Stanley Security Solutions, Inc.;

- The number of current and former employees from January 1, 2013 to January 31, 2014 for all of the Defendants that employed individuals in California during that time period;

- Workweek and workday designations for each of the Defendants that employed individuals in California during that time period;

- The number of current and former non-exempt service technicians who primarily work/ed in the field and were provided with company vehicles from June 27, 2009 to the present for Stanley Access, Stanley Convergent and Stanley Security;

- The California branch locations of the Defendants that employed field technicians on prevailing wage jobs in California during the relevant time period;

- The average hourly rate for the Field Technicians employed by Stanley Access, Stanley Convergent and Stanley Security Solutions, Inc.

- The California branch locations that Field Technicians in California were assigned to by Stanley Access, Stanley Security and Stanley Convergent, and the number of current Field Technicians who work in each branch of each of those companies; and

- Plaintiffs have also taken the deposition of their former branch manager, Michael Hecker

Rutledge Decl., ¶ 34.

Following the mediation, the mediator gave the parties one week to consider a proposal he made to the parties. Rutledge Decl., ¶ 35. On June 6, 2014, the parties

- 5 -

1   agreed to accept the mediator's proposal and this settlement ensued. *Id.*, ¶ 36.

2   ## IV.    REASONS FOR SETTLEMENT

3       Named Plaintiffs and Defendants engaged in extensive settlement efforts after

4   11 months of discovery, including the production and review of over 10,000 pages of

5   documents. Rutledge Dec. ¶ 37. In addition to the above, before the commencement of

6   settlement negotiations, the named Plaintiffs were provided with statistical

7   information concerning the number of Class Members, the number of workweeks each

8   individual worked for Defendants, and the dates of employment of each putative Class

9   Member. *Id.*, ¶ 38. The parties held multiple telephonic meetings and voluntarily

10  exchanged voluminous and detailed information relating to the Class. *Id.*, ¶ 39. The

11  parties fully explored the evidence and considered efforts taken by Defendants to fix

12  its paystub problems and to ensure that employees are paid for all hours worked, and

13  that meal and rest breaks are taken. *Id.*, ¶ 40.

14      All of Plaintiffs' claims arise from their employment with Defendants. Rutledge

15  Dec. ¶ 41. As to Subclass I, the Field Technician Class, Plaintiffs allege they were not

16  paid their proper wages while working in the field as construction workers, including,

17  but not limited to, when they worked on public projects. *Id.*, ¶ 42. At the time of

18  mediation, this Subclass consists of approximately 300 members. *Id.*, ¶ 43. As to the

19  Subclass II, the Wage Statement Class, Plaintiffs allege they were not provided with

20  accurate itemized wage statements including but not limited to having the wrong name

21  of the employer listed on the pay stub, including the incorrect rate of pay and

22  erroneous sum of wages earned. *Id.*, ¶ 44. At the time of mediation, the number of

23  members in this Subclass consisted of about 888 members. *Id.*, ¶ 45.

24      From about January 10, 2014, to May 20, 2014, the parties spent considerable

25  time and resources sharing information. Rutledge Decl., ¶ 46. The parties engaged in a

26  substantial exchange of informal discovery. Defendants provided Plaintiffs a random

27  sampling of pay records, paycheck stubs, personnel files, and other documents from of

28  the putative Class. *Id.*, ¶ 47. Defendants have verified under penalty of perjury that the

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, Suite 201
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile:   (619) 259-5455

- 6 -

1   records provided to the Plaintiffs are true and accurate. See Decl. of Jim Tallaksen, ¶¶

2   1-13.

3         In January 2014, Plaintiffs engaged the services of an expert to help Plaintiffs

4   analyze the data provided by Defendants. Rutledge Decl., ¶ 48; Garza Decl., ¶¶ 1-47.

5   Plaintiffs analyzed these documents thoroughly to determine not only that the Classes

6   are similarly situated to the named Plaintiffs, but also to further Class Counsel's

7   analysis of the potential judgment value of the case. *Id.*, ¶ 49. Plaintiffs' expert was

8   actively involved in the examination of data provided by the Defendants. Rutledge

9   Decl., ¶ 50; Garza Decl., ¶¶ 29-47. Plaintiffs' expert ran detailed reports of his analysis

10  of the raw data, and created a sophisticated set of spreadsheets measuring damages to

11  the Class. Rutledge Decl., ¶ 51; Garza Decl., ¶¶ 29-47. Additionally, Plaintiffs took

12  the deposition of Plaintiffs' supervisor. *Id.*, ¶ 52.

13        On May 28, 2014, settlement negotiations took place before Mark Rudy,

14  Esquire. Rutledge Dec. ¶ 53. The parties spent an entire day with Mr. Rudy discussing

15  the merits of their claims and the strengths of the defenses. *Id.*, ¶ 54. The parties did

16  not reach an agreement immediately. *Id.*, ¶ 55. Instead, Mr. Rudy made a mediator's

17  proposal giving the parties one week to consider his proposal. *Id.*

18        The named Plaintiffs and Class Counsel concluded, after taking into account the

19  named Plaintiffs' independent investigation into the claims of the class, the potential

20  recovery, the sharply disputed factual and legal issues involved in this litigation,

21  Defendants' efforts to eliminate future violations, the risks of continuing the litigation

22  in this case and the substantial benefits to be received pursuant to the compromise and

23  settlement of the litigation as set forth in this Agreement, that settlement on the terms

24  set forth herein is in the best interest of the named Plaintiffs and the Class and is fair

25  and reasonable. Decl. Rutledge, ¶ 56. Similarly, Defendants concluded, after taking

26  into account the sharply disputed factual and legal issues involved in this litigation,

27  the risks of continued litigation and class certification, the potential damages and its

28  desire to put the controversy to rest, that the settlement terms set forth in this

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, Suite 201
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

- 7 -

1  Agreement are in their best interest and are fair and reasonable. *Id.*, ¶ 57. This

2  settlement is the result of extensive, arms' length negotiations. *Id.*, ¶ 58.

3      Based on the analysis of the records made available to the Plaintiffs, witness

4  interviews, and raw data, Plaintiffs' expert opines the gross settlement amount is

5  more than one third of Defendants' total exposure in the case, assuming Plaintiffs

6  prevailed on all claims. Decl. of Juan Garza ¶ 36. Based on the foregoing, this

7  settlement is fair and reasonable to the Class.

8      **A. Settlement Terms**

9      Without admitting wrongdoing, Defendants have agreed to settle the

10  underlying class claims with Plaintiffs for $4,970,000. Rutledge Dec. ¶ 59. This

11  amount is inclusive of:  (1) individual settlement payments to each Participating

12  Class Member who submits a Claim Form; (2) Class Representative Enhancement

13  Payments to class representatives Long and Conard of $5,000 each, for their services

14  on behalf of the class; (3) a $37,500 payment to the Labor and Workforce

15  Development Agency ("LWDA") regarding Plaintiffs' PAGA claim; (4) reasonable

16  claims administrator's fees and expenses not to exceed $25,000; and (5) Class

17  Counsel's fees and costs in the amount of $1,491,000. Rutledge Dec. ¶ 60. The Class

18  will receive a minimum of 70% of the Net Settlement Amount. *Id.*, ¶¶ 3, Ex. 1

19  [Settlement Agreement] at ¶ 60, ¶ 61.

20      **B.   The Proposed Class Settlement Adequately Compensates the Class**

21      The net settlement amount to the proposed class is about $3.4 million, about

22  $2.4 million of which will go to the construction workers for unpaid wages (Subclass

23  I) and about $1,025,000 to the paystub class (Subclass II). Rutledge Dec. ¶ 62.

24  Assuming every Class Member in Subclass I files a claim, the average amount he or

25  she will receive is $7,965 if he or she was employed during the entire class period.

26  *Id.*, ¶ 63. The average amount a class member in Subclass II will receive is $1,280,

27  assuming every member who was employed during the class period files a timely

28  claim. *Id.*, ¶ 64. These amounts will increase or decrease proportionally based on the

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, Suite 201
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

- 8 -

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, Suite 201
San Diego, California 92103
Telephone: (619) 886-7234
Facsimile: (619) 239-5455

1 number of claims filed and the length of service of the Class Members. *Id.*, ¶ 65. The

2 settlement agreement guarantees that 70% of the net settlement funds will be

3 distributed to the Class with no right of reversion to the Defendants. *Id.*, ¶ 66.

4        Class Counsel has conducted a thorough investigation into the facts of the

5 class action, including an extensive review of relevant documents and data, and has

6 diligently pursued an investigation of the Settlement Class Members' claims against

7 Defendants. Decl. Rutledge, ¶67. Class Counsel has also taken into account the

8 uncertain outcome and risk of litigation, especially in complex actions such as this

9 Litigation. *Id.*, ¶ 68. Class Counsel is also mindful of and recognizes the inherent

10 problems of proof under, and alleged defenses to, the claims asserted in the Action.

11 *Id.*, ¶ 69. Based on the foregoing documents and data, services of an expert, and their

12 own independent investigation and evaluation, Class Counsel opines the settlement

13 with Defendants for the consideration and on the terms set forth in the Settlement

14 Agreement is fair, reasonable, and adequate and is in the best interest of the Class in

15 light of all known facts and circumstances, including the risk of significant delay,

16 defenses asserted by Defendants, and numerous potential appellate issues. *Id.*, ¶ 70.

17 **V.    THE SETTLEMENT MEETS ALL CRITERIA NECESSARY FOR**

18        **PRELIMINARY APPROVAL**

19        A strong judicial policy favors settlement of class actions. *Class Plaintiffs v.*

20 *City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Nevertheless, when a proposed

21 class-wide settlement is reached, the settlement must be submitted to the court for

22 approval. Fed. R. Civ. P. 23(e)(1)(A); 2 H. Newberg & A. Conte, Newberg on Class

23 Actions (3d ed. 1992) at §11.41, p. 11-87; *Staton v. Boeing Co.*, 327 F.3d 938, 952

24 (9th Cir. 2003).

25        Preliminary approval is the first of three steps that comprise the approval

26 procedure for settlements of class actions. *See e.g. Louie v. Kaiser Found. Health*

27 *Plan, Inc.*, 2008 U.S. Dist. LEXIS 78314 (S.D. Cal. 2008). The second step is the

28 dissemination of notice of the settlement to all class members. The third step is a

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, Suite 201
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 239-5455

final settlement approval hearing, at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented and class members may be heard regarding the settlement. *See Manual for Complex Litigation, Second* § 30.44 (1993).

Thus, the preliminary approval of the trial court is simply a conditional finding that the settlement appears to be within the range of acceptable settlements. As Professor Newberg comments, "The strength of the findings made by a judge at a preliminary hearing or conference concerning a tentative settlement proposal may vary. The court may find that the settlement proposal contains some merit, is within the range of reasonableness required for a settlement offer, or is presumptively valid subject only to any objections that may be raised at a final hearing." 4 Conte & Newberg, *Newberg on Class Actions*, §11.26 (4th Ed. 2002) (hereinafter "*Newberg on Class Actions*").

The procedures for submission of a proposed settlement for preliminary approval are discussed at *Newberg on Class Actions*, §11.24 – 11.26. Newberg observes at Section 11.24:

> When the parties to an action reach a monetary settlement, they will usually prepare and execute a joint stipulation of settlement, which is submitted to the court for preliminary approval. The stipulation should set forth the central terms of the agreement, including but not limited to, the amount of the settlement, form of payment, manner of determining the effective date of settlement, and any recapture clause.

*Manual for Complex Litigation, Second* §30.44 at 229; *Louie, supra*, at *7. Preliminary approval is merely the prerequisite to giving notice so that "the proposed settlement . . . may be submitted to members of the prospective Class for their acceptance or rejection." *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.*, 323 F.Supp. 364, 372 (E.D. Pa. 1970). There is an initial presumption of fairness when a proposed settlement, which was negotiated at arm's

- 10 -

1  length by counsel for the Class, as was done here, is presented for court approval.

2  *Newberg*, 3d Ed., §11.41, p. 11-88. However, the ultimate question of whether the

3  proposed settlement is fair, reasonable, and adequate is made after notice of the

4  settlement is given to the class members and the Court holds a final settlement

5  hearing.

6  **A.**      **The Role of the Court in Preliminary Approval of a Class Action**

7  **Settlement.**

8       "A settlement should be approved if it is fundamentally fair, adequate and

9  reasonable." *Gribble v. Cool Transports, Inc.*, 2008 WL 5281665m at *6-7 (C. D.

10  Cal. Dec. 15 2008) (citing *Torrisi v. Tucson Electric Power Co.*, 8 F.3d 1370, 1376

11  (9th Cir. 1993)). Federal Rule of Civil Procedure 23(e) requires the Court to

12  determine whether a final settlement binding upon class members is "fair, reasonable,

13  and adequate." Fed.R.Civ.P. 23(e)(2). "It is the settlement taken as a whole, rather

14  than the individual component parts, that must be examined for overall fairness."

15  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The settlement may

16  not be the product of collusion among the negotiating parties. *In re Mego Fin. Corp.*

17  *Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).

18       Courts adhere to "an initial presumption of fairness when a proposed class

19  settlement, which was negotiated at arm's length by counsel for the class, is

20  presented for court approval." 4 *Newberg on Class Actions* § 11.41. After the parties'

21  arm's length negotiations, it is not for the Court to substitute its judgment as to a

22  proper settlement for that of such competent counsel. *Bellows v. NCO Fin. Sys., Inc.*,

23  No. 3:07-cv-01413-W-AJB, 2008 WL 5458986, *8 (S.D. Cal. Dec. 10, 2008) ("it is

24  the considered judgment of experienced counsel that this settlement is a fair,

25  reasonable, and adequate settlement of the litigation, which should be given great

26  weight."); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) ("The

27  recommendations of plaintiffs' counsel should be given a presumption of

28  reasonableness.").

     The approval of a proposed settlement of a class action is a matter of discretion

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, Suite 201
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, Suite 201
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

1  for the trial court. *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th

2  Cir. 2004). In exercising that discretion, however, courts should be guided by the

3  policy that the law favors and prefers the compromise and settlement of class action

4  suits. *Officers for Justice v. Civil Service Commission*, 688 F.2d 615, 625 (9th Cir.

5  1982). Furthermore, courts must give "proper deference to the private consensual

6  decision of the parties," since "the court's intrusion upon what is otherwise a private

7  consensual agreement negotiated between the parties to a lawsuit must be limited to

8  the extent necessary to reach a reasoned judgment that the agreement is not the

9  product of fraud or overreaching by, or collusion between, the negotiating parties,

10  and the settlement, taken as a whole, is fair, reasonable and adequate to all

11  concerned." *Hanlon*, 150 F.3d at 1027.

### B.   Factors to Be Considered in Granting Preliminary Approval.

13      A number of factors are to be considered in evaluating a settlement for

14  purposes of preliminary approval. These criteria are generally: (1) if the proposed

15  settlement appears to be the product of serious, informed, non-collusive negotiations,

16  (2) has no obvious deficiencies, (3) does not improperly grant preferential treatment

17  to class representatives or segments of the class, and (4) is reasonable. If settlement

18  meets this test, the court should direct that notice be given to the class members of a

19  formal fairness hearing, at which evidence may be presented in support of and in

20  opposition to the settlement. *Manual of Complex Litigation*, Second § 30.44, at 229;

21  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The Class's reaction

22  to the settlement should also be considered at the final approval stage. *Rodriguez v.

23  West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009).

24      Here, the settlement meets all of these criteria for the reasons explained in

25  these papers. This settlement is the result of extensive and hard fought negotiations

26  that ultimately came down to a mediator's proposal. Counsel for the parties, after

27  settlement negotiations lasting the entire day, were only able to reach an agreement

28  one week later based upon counsel's review of the evidence and advice of the

- 12 -

1   mediator. Decl. Rutledge, ¶¶ 35, 53-57.

2        Although a settlement was reached, Defendants deny each of the claims and
3   contentions alleged in this Action. Defendants have asserted every feasible defense,
4   and have denied and continue to deny any wrongdoing or legal liability arising out of
5   the conduct alleged in this case. Nonetheless, Defendants have agreed to avoid the
6   expense, inconvenience, and burden of further legal proceedings and the
7   uncertainties of trial and appeals by entering the Settlement Agreement and believe
8   that the settlement is fair and should be approved.

9        Moreover, Plaintiffs and Class Counsel believe this settlement is fair,
10  reasonable, and adequate. Because of the settlement, Defendants have agreed to pay
11  almost $5 million as payment in full of all of the Class claims arising from the events
12  described in the FAC. A substantial amount of the settlement is "non-reversionary,"
13  meaning that at least 70% of the Net Settlement Amount is guaranteed to be paid out
14  to Class Members. Decl. Rutledge, Ex. 1, at p. 7-8, ¶¶ 60, 61.

15       The experience of Class Counsel in litigating and negotiating complex wage
16  and hour disputes likewise strongly favors approving the settlement. "The
17  involvement of experienced class action counsel and the fact that the settlement
18  agreement was reached in arm's length negotiations, after relevant discovery ha[s]
19  taken place create[s] a presumption that the agreement is fair." *Linney v. Alaska*
20  *Cellular P'ship*, 1997 WL 450064, *5 (N.D. Cal. July 18, 1997); *Gribble*, 2008 WL
21  5281665 at *9 ("Great weight is accorded to the recommendation of counsel, who are
22  most closely acquainted with the facts"). The putative class had the benefit of
23  attorneys who are highly experienced in complex litigation and familiar with the facts
24  and law in the case, and who have negotiated many such class and collective action
25  settlements. The negotiations in this case were hard-fought and at arm's length. In
26  Plaintiffs' counsel's view, the settlement provides substantial benefits to the Class,
27  especially when one considers, among other things, the attendant expense, risks,
28  difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings.

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, Suite 201
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

- 13 -

Further, in Plaintiffs' Counsels' experience, when compared with similar litigation, the relief to the class is substantial.

Defendants strenuously argued against class certification. It is unknown how the Court would rule on class certification. Even if Plaintiffs were to obtain class certification, the risks of 23(f) appeal and the constantly evolving law of class actions in this Circuit makes the risk of maintaining a class certified a very real concern for Plaintiffs.

In sum, the settlement meets all of the factors to be considered in granting preliminary approval. Specifically, it brings substantial and certain monetary value to class members now, rather than uncertain value to an uncertain number of people at an uncertain time after protracted litigation involving complex and changing law. While both sides believe the facts support their respective positions, Plaintiffs and Defendants reached this proposed compromise after extended settlement discussion facilitated by a mediator. The parties therefore request that the Court preliminarily approve the Rule 23 settlement and authorize notice to be sent to the respective class members.

## VI.    **THE CLASS MAY BE CERTIFIED FOR SETTLEMENT PURPOSES**

To maintain a class action under rule 23(b)(3), the following four prerequisites of F.R.C.P. Rule 23(a) must be satisfied:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the

claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, Suite 201
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

14 -

1  For the reasons discussed below, the Wage Statement and Field Technician

2  subclasses easily meet the Rule 23(a) prerequisites and the predominance and

3  superiority requirements of Rule 23(b)(3).

4     **A.     The Numerosity Requirement Is Satisfied.**

5     Rule 23(a) merely requires that the class be "so numerous that joinder of all

6  members is impracticable." F.R.C.P. §23(a). Rule 23(a)(1) does not mandate that

7  joinder of all parties be impossible, only that joinder be difficult or inconvenient.

8  *Miletake v. Allstate Ins. Co.*, 2010 WL 809579, 10 (N.D. Cal. March 05, 2010).

9  "Courts have routinely found the numerosity requirement satisfied when the class

10 comprises 40 or more members." *EEOC v. Kovacevich "5" Farms*, 2007 U.S. Dist.

11 LEXIS 32330 at *57 (E.D.Cal. April 18, 2007); *see also Slaven v. BP Am., Inc.*, 190

12 F.R.D. 649, 654 (C.D. Cal. 2000); *Jordan v. County of Los Angeles*, 669 F.2d 1311,

13 1320 n.10 (9th Cir. 1982), vacated on other grounds, 459 U.S. 810, 103 S. Ct. 35, 74

14 L. Ed. 2d 48 (1982) (noting that classes with fewer than 70 members have been

15 certified in numerous cases).

16    Here, at the time of mediation, Subclass I, the Field Technician class, was

17 composed of approximately 300 Class Members and Subclass II, the Wage Statement

18 class, was composed of approximately 888 Class Members. These numbers are

19 sufficiently numerous. Decl. Rutledge, ¶¶ 43, 45.

20    **B.     Common Questions of Law and Fact Bind the Class.**

21    Under Rule 23(a)(2), questions of law or fact must be common to the class. Fed.

22 R. Civ. P. 23(a)(2).  Rule 23(a)(2) is to be construed permissively. *Hanlon v. Chrysler*

23 *Corp.*, 150 F. 3d 1011, 1020 (9th Cir. 1011). The existence of shared legal issues with

24 divergent factual predicates is sufficient, as is a common core of salient facts coupled

25 with disparate legal remedies within the class. *Id.* at 1020.

26    In this case, common questions of law and fact predominate. Commonality

27 requires "questions of law or fact common to the class." The common questions,

28 which predominate in this action, include: (1) whether Class Members paystubs were

- 15 -

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, Suite 201
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile:  (619) 259-5455

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, Suite 201
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

1   inaccurate and non-compliant with the California Labor Code; (2) whether Class

2   members are entitled to overtime compensation for their overtime hours worked; (3)

3   whether Class members are entitled to premium pay wages for missed meal and rest

4   breaks; and (4) whether Defendants were willful in its failure to pay all compensation

5   due to Class members, among other common issues. These are all common issues of

6   law and fact that can be adjudicated on a class-wide basis.

7          Because the Wage Statement and Field Technician subclasses share a

8   predominant legal issues as well as a common core of the facts, the subclasses meet

9   the minimal showing required of Rule 23(a)(2).

10         **C.    The Claims of the Plaintiffs Are Typical of the Class Claims.**

11         The third prerequisite to class certification is that the claims of the

12  representative parties must be typical of the claims of the class. Fed. R. Civ. P.

13  23(a)(3). Like the commonality requirements, the typicality requirement is a

14  "permissive standard." *Hanlon* at 1020. The typicality requirement of Rule 23(a)

15  requires the Plaintiffs to demonstrate that the members of the class have the same or

16  similar claims as the named Plaintiffs. In *Hanlon,* the Ninth Circuit held that "[u]nder

17  the rule's permissive standards, representative claims are 'typical' if they are

18  reasonably coextensive with those of absent class members; they need not be

19  substantially identical." 50 F.3d at 1020.

20         In the instant case, there can be little doubt that the typicality requirement is

21  fully satisfied. Plaintiffs, like every other member of the Wage Statement Class, were

22  employed by Defendants and claim they received erroneous and noncompliant

23  paystubs. Similarly, Plaintiffs were also like every other member of the Field

24  Technician Class, in that they were non-exempt employees of Defendants who

25  worked in the field doing construction, service, repair, technical, and/or maintenance

26  work and who claim that they are owed unpaid wages and were denied compliant

27  meal and rest breaks. The claims of Plaintiffs and the members of the Class arise

28  from the same course of conduct by the Defendants, involve the same work

- 16 -

1   performed, and are based on the same legal theories. Thus, the typicality requirement

2   of Rule 23 is met as to the common issues presented in this case.

    **D.**    **The Class Representatives Have Fairly and Adequately Protected**

        **the Interest of the Class.**

5       Rule 23(a)(4) requires that representative parties fairly and adequately protect

6   the interests of the class. Fed. R. Civ. P. 23(a)(4). In analyzing whether a plaintiff has

7   satisfied the requirements of Rule 23(a)(4), courts generally consider only two

8   questions: whether (1) the representative plaintiffs and their counsel have any

9   conflicts of interest with other class members, and (2) whether the representative

10  plaintiffs and their counsel prosecute the action vigorously on behalf of the class.

11  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

    **1.**    **The Class Representatives and Class Counsel Share the Same**

        **Interests With All Sub-Class Members.**

14      To assure that a representative's own interests are the same or similar to the

15  rest of the class, the plaintiff must be a member of the class he or she claims to

16  represent. *General Tel. Co. of Southwest v. Falcom*, 457, U.S. 147, 156 (1982). In

17  *Glass v. UBS Financial Services, Inc.*, 331 Fed. Appx. 452, 455 (9th Cir. 2009), the

18  court noted, "former and current employees are equally interested in obtaining

19  compensation for the assuredly unlawful practices set forth in the complaint."

20      Here, Donovan Long and Lloyd Conard are former field technicians for

21  Defendant Stanley Access, Inc. Plaintiffs Long and Conard have the same claims and

22  seek the same relief from Defendants as both the Wage Statement and Field

23  Technician Class Members. Plaintiffs' counsel has an incentive to prosecute the

24  action in order to obtain relief for the subclasses.

25      Additionally, the named Plaintiffs have taken their duties as representatives of

26  the class very seriously and have only acted in alliance with the interests of all

27  subclass members. They have actively participated in the prosecution of this case to

28  date. Plaintiffs effectively communicated with counsel, providing documents to

- 17 -

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, Suite 201
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

1 counsel, and actively participated extensively in discovery and investigation of the

2 action. The telephonic attendances and personal involvement of the Plaintiffs at the

3 mediation before Mark Rudy was essential to the success of the mediation. Decl.

4 Rutledge, ¶¶ 39, 113-115.

### 2. Class Counsel has Prosecuted and will Prosecute This Action Vigorously on Behalf of Both Subclasses.

7     Rule 23(g) provides some guidance for the Court to determine whether counsel

8 is qualified and competent pursuant to Rule 23(a) (4). A court must consider: the

9 work counsel has done in identifying or investigating potential claims in the action;

10 counsel's experience in handling class actions, other complex litigation, and the types

11 of claims asserted in the action; counsel's knowledge of the applicable law; and the

12 resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g).

13     In this case, the Plaintiffs have retained competent counsel who has extensive

14 experience in class actions in California. See Decl. Rutledge at ¶¶ 48, 50, 51, 81, 83,

15 84, 86. Class Counsel has conducted extensive investigation, research, and discovery

16 and filed numerous motions in this case. Additionally, Class Counsel has significant

17 other class action litigation experience in both state and federal court. *Id.*, ¶¶ 98-107.

18 Class Counsel has demonstrated that he is competent to handle these subclass issues.

19 *Id.*

20     In sum, the Wage Statement and Field Technician Subclasses will easily meet

21 the Rule 23(a) prerequisites for all claims.

### E. The Wage Statement and Field Technician Subclasses Satisfy Rule 23(b)(3) Because Common Issues of Law and Fact Predominate Over Individual Inquiries and a Class Action is the Superior Method of Adjudicating the Claims.

26     If all prerequisites of Rule 23(a) are met, a class should be certified if the Court

27 finds that the "questions of law or fact common to class members predominate over

28 any questions affecting only individual members, and that a class action is superior to

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, Suite 201
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

- 18 -

1  other available methods for fairly and efficiently adjudicating the controversy." Fed.

2  R. Civ. P. 23(b)(3). A central concern of the Rule 23(b)(3) predominance test is

3  whether "adjudication of common issues will help achieve judicial economy. *Vinole*

4  *v. Country Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009).

### 1.  Common Issues Predominate.

6      The predominance inquiry "focuses on the relationship between the common

7  and individual issues." *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v.*

8  *Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir.2001). "When common questions

9  present a significant aspect of the case and they can be resolved for all members of the

10  class in a single adjudication, there is clear justification for handling the dispute on a

11  representative rather than on an individual basis." *Hanlon*, *supra*, 150 F.3d at 1022.

12  To establish predominance of common issues, a party seeking class certification is not

13  required to show that the legal and factual issues raised by the claims of each class

14  member are identical. Rather, the predominance inquiry focuses on whether the

15  proposed class is "sufficiently cohesive to warrant adjudication by representation."

16  *Culinary/Bartender Trust Fund*, 244 F.3d at 1162 (quoting *Amchem*, 521 U.S. at 623).

17      The common issues, which predominate in this action, include: (1) whether

18  Class Members paystubs were inaccurate and non-compliant with the California Labor

19  Code; (2) whether Class members are entitled to overtime compensation for their

20  overtime hours worked; (3) whether Class members are entitled to premium pay wages

21  for missed meal and rest breaks; and (4) whether Defendants were willful in its failure

22  to pay all compensation due to Class members, among other common issues. These are

23  all common issues of law and fact that can be adjudicated on a class-wide basis.

### 2.  A Class Action is the Superior Method of Adjudicating the Claims
### Because A Class Action Will Help Achieve Judicial Economy.

26      Where class-wide litigation of common issues will reduce litigation costs and

27  promote greater efficiency, a class action may be superior to other methods of

28  litigation, and is certainly superior "if no realistic alternative exists." *Otsuka v. Polo*

- 19 -

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, Suite 201
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile:  (619) 259-5455

1  *Ralph Lauren Corp.*, 251 F.R.D. 439, 448 (N. D. Cal. 2008). Even if an individual has

2  a theoretical means of redress outside the class context, that does not mean class

3  treatment is inappropriate. *Id.* Indeed, numerous wage and hour cases have been

4  certified despite the existence of other less effective avenues of redress such as DLSE

5  proceedings. *See, e.g., Jimenez v. Domino's Pizza, Inc.*, 238 F.R.D. 241 (C.D. Cal.

6  2006); *Gentry v. Superior Court*, 42 Cal. 4th 443, 455-56 (2007).

7      Here, each Field Technician and Wage Statement class member's claims

8  implicate the same issues arising from the same factual basis. For the Field Technician

9  Class, the issue is whether they were properly compensated for all hours worked and

10  whether or not they were provided with compliant meal and rest breaks. For the Wage

11  Statement Class, the issue is whether they were provided with accurate itemized wage

12  statements. If these claims were addressed on an individual basis, more than 1,200

13  cases would follow a similar trajectory, and each would come to a similar result. Thus,

14  a class action would save the court and all parties immeasurable resources, a factor

15  that weighs heavily in the Court's decision to certify a potential class.

16  **VII.   THIS SETTLEMENT IS FAIR, REASONABLE AND IN THE BEST**

17  **INTEREST OF THE CLASS**

18      This settlement should be approved because it favorably resolves the case. It

19  benefits Plaintiffs and Class Members. Proceeding through trial and appeal would

20  involve inherent litigation risks, would be costly, and would substantially defer

21  resolution. As discussed above, the parties have engaged in substantial motion

22  practice, conducted written discovery, depositions, and the parties have exchanged

23  additional information in the course of the settlement negotiations. This settlement is

24  the product of vigorous negotiations spanning over several months, and full

25  disclosure and voluntary exchange of information crucial to determining the fairness

26  of the settlement.

27      After taking into account the disputed factual and legal issues involved in this

28  litigation, the inherent risk and uncertainties attending further prosecution, and the

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, Suite 201
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

- 20 -

1  substantial benefits to be received pursuant to the compromise and settlement of the

2  litigation as set forth in the Agreement, the parties and their respective counsel

3  believe this proposed class settlement is fair and reasonable and is in the best interest

4  of the Plaintiffs, Class Members, and Defendants. In addition, no one is prejudiced by

5  the settlement. Any Class Member who believes his or her claim has a value greater

6  than the settlement may preserve his or her individual claim by opting out of the class

7  settlement, to pursue his or her own claim outside of this litigation. Accordingly, the

8  Court should grant preliminary approval of the proposed Class Settlement.

9       **A.**    **The Proposed Settlement Has No "Obvious Deficiencies."**

10      At the preliminary approval state, a court should "simply conduct a cursory

11  review of the terms of the parties' settlement for the purpose of resolving any glaring

12  deficiencies before ordering the parties to send the proposal to class members."

13  *Alberto*, 252 F.R.D. 652, 665 (E.D. Cal. 2008).

14       **1.**    **Settlement Value.**

15      The Gross Settlement Amount is $4,970,000.

16      After thorough investigations of the facts and law, the parties have gained a

17  comprehensive knowledge of Plaintiffs' claims and Defendants' defenses.

18  Consequently, the parties have sufficient evidence to make an informed assessment

19  of the merits of their positions. Based on their knowledge of the case and applicable

20  law, as well as their experience in similar actions, the parties' counsel believe the

21  settlement is fair, reasonable and adequate.

22      The parties naturally dispute the strength of the Plaintiffs' case, and the

23  settlement reflects the parties' compromise of their assessments of the worst-case and

24  best-case scenarios, weighing the likelihood of various potential outcomes. Plaintiffs'

25  best-case scenario is class certification and recovery on the merits. Plaintiffs' worst-

26  case scenario is that the class is not certified and/or they lose at trial. The fact is that

27  this case is no slam-dunk for either side. Even after the mediator's proposal prompted

28  an eventual agreement in principle, it took the parties several months to reach a

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, Suite 201
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

- 21 -

written agreement. The details of the settlement involved extensive further negotiation and compromise. This reflects the parties' zealous representations of their respective positions on the claims and defenses, and the difficulties and risks associated with protracted litigation.

### 2.    Individual Settlement Payments.

The Field Technician Class shall be allocated 75% of the Net Settlement Amount (gross settlement less claims administration costs, class counsel award, payment to the LWDA and class representative enhancement award) and the Wage Statement Class shall be allocated 25% of the Net Settlement Amount.

The independent claims administrator shall calculate the total aggregate number of Workweeks that all Participating Class Members worked during the Class Period in the Field Technician Class and Wage Statement Class, which will then be used to determine the Payout Ratio for each individual Class Member.

The Individual Settlement Payments for Field Technician Class Members shall be calculated by multiplying 75% of the Net Settlement Fund by each Field Technician Class Member's Payout Ratio, and the Individual Settlement Payments for Wage Statement Class Members shall be calculated by multiplying 25% of the Net Settlement Fund by each Wage Statement Class Member's Payout Ratio.

### 3.    Payroll Taxes.

Defendants are responsible for paying the employer's share of applicable payroll taxes in addition to the settlement consideration.

### 4.    Notice.

Class members are entitled to the "best notice practicable under the circumstances." Fed. R. Civ. P. 23 (c)(2)(B). "A class action settlement notice 'is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d at 1126, citing *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004).

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, Suite 201
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

- 22 -

1  Here, the notification procedures are direct and simple. The parties have agreed

2  upon procedures by which the Class will be provided with written notice of the

3  Settlement similar to that approved and utilized in hundreds of class action

4  settlements. The parties have jointly drafted a Notice of Preliminary Approval of the

5  Settlement. The Notice includes information common to wage and hour class action

6  settlements. A draft of the Notice is attached to the Declaration of Thomas D.

7  Rutledge. (Rutledge Decl., Exh. 2.) The Notices will be sent to all Class Members.

8  ### 5.   Opt-out Provision.

9  The Notice provides class members with instructions on how to exclude

10  themselves from the Settlement. To do so, class members must send a letter to the

11  Independent Claims Administrator requesting to be excluded from the Settlement.

12  Class Members who submit a timely and valid request for exclusion receive none of

13  the benefits of the settlement and are not bound by the Release.

14  ### 6.   Objections.

15  Class Members may object to the terms of the Settlement by filing a written

16  objection with eh Court and counsel for the parties no later than sixty calendar days

17  after initial mailing of the Notice Packet.

18  ### 7.   Claims Administration Costs.

19  The parties received several bids for claims administration work. The lowest

20  was from CPT Group, Inc. Costs for claims administration is estimated to be

21  $21,500.

22  ### 8.   Class Representative Enhancements.

23  Service or incentive payments to named plaintiffs are frequently awarded to

24  recognize their time and efforts, and the risks they undertake on behalf of the Class.

25  Courts routinely award service payments, which are intended to advance public

26  policy by encouraging individuals to come forward and perform their civic duty in

27  protecting the rights of the class, as well as to compensate class representatives for

28  their time, effort, and inconvenience. Courts routinely approve incentive awards to

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, Suite 201
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

- 23 -

1  compensate named plaintiffs for the services they provided and the risks they
2  incurred during the course of the class action litigation. In the *Ingram* case, the Court
3  approved incentive awards of $300,000 to each named plaintiff in recognition of the
4  services they provided to the class by responding to discovery, participating in the
5  mediation process, and taking the risk of stepping forward on behalf of the class. *see*
6  *also Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995)
7  (approving $50,000 participation award for representative Plaintiff).

8       Courts take varying approaches to analyzing the reasonableness of a class
9  representative enhancement. Some courts consider certain specific amounts
10  reasonable: *In re Cellphone Fee Termination Cases*, 186 Cal. App. 4th 1380, 1395
11  (2010) ($10,000 incentive payments are reasonable); *In re Mego Fin. Corp. Sec.*
12  *Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (approving incentive awards of $5,000 each
13  to the two class representatives of 5,400 potential class members in a settlement of
14  $1.725 million). Other courts examine the percentage of the overall settlement
15  constituted by the plaintiff's incentive award. *See In re Mego Fin. Corp.*, 213 F.3d at
16  463 (total incentive payments did not exceed 0.56% of the total settlement).

17       Here, the class representatives played a substantial role in the litigation and are
18  entitled to an enhanced award for their services as class representatives and for the
19  risk taken by them in being named Plaintiffs against this high-profile employer.
20  Defendants do not oppose the requested Service Payments. Class Counsel can attest
21  that all of the Named Plaintiffs have taken very real steps to advance the interests of
22  the class and devoted a great deal of time and work assisting counsel in the case,
23  communicated with counsel very frequently, and were very valuable participants in
24  the strategy for and success of the settlement negotiations. Rutledge Dec., ¶¶ 113-
25  115. Plaintiffs risked intrusive discovery and the payment of employer costs, and the
26  risk of retaliation for suing an employer. Therefore, the requested service payments
27  are reasonable.

28

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, Suite 201
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

- 24 -

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, Suite 201
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

9.     **Attorneys' Fees.**

For purposes of preliminary approval, class counsel's fees "must appear reasonable." *Cervantez v. Celestica Corp.*, 2010 WL 2712267 (C.D. Cal. July 6, 2010). Numerous courts in the Ninth Circuit have awarded attorney's fees at one third of the total settlement value. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460 (9th Cir. 2000)(affirming award of fees equal to one-third of total recovery); *In re Public Ser. Co. of new Mexico*, 1992 WL 278452, at *1, *12 (S.D. Cal. July 28, 1992)(awarding one-third); *Antonopulos v. North American Thoroughbreds, Inc.*, 1991 WL 427893, at *1, *4 (S.D. Cal. May 6, 1991)(awarding one-third); *In re M.D.C. Holdings Sec. Litig.*, 1990 WL 454747, at 1, 10 (S.D. Cal. Aug. 30 1990)(awarding 30% attorneys' fee plus expenses); *In re Heritage Bond Litig.*, 2005 WL 1594403 (C.D. Cal. June 10, 2005) (awarding 33 1/3 % attorneys' fees).

a.     **Class Counsel's Proposed Fees Are Reasonable.**

Here, Class Counsel seeks, and Defendants do not object to, an award of fees and costs for $1,494,000, which is 30% of the Gross Settlement Fund. The requested fees and costs are fair compensation for undertaking complex, risky, expensive, and time-consuming litigation solely on a contingency basis. Further, the requests are in line with other attorneys' fees awards in California for wage and hour class actions, particularly where a significant portion of the class members will be receiving substantial claim payment amounts of several thousand dollars. Moreover, the requested fees, after costs, will be less than 29% of the Gross Settlement Fund. Additionally, as will be demonstrated in Class Counsel's moving papers, which will be filed concurrently with Plaintiffs' Motion for Final Approval, Class Counsel's requested fees are consistent with Counsel's lodestar at a 1.5 multiplier.

The Ninth Circuit has recognized that an appropriate method for awarding attorneys' fees in class action is to award a percentage of the "common fund" created because of the settlement. *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The purpose of the common fund/percentage approach is to "spread

- 25 -

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, Suite 201
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-2455

1  litigation costs proportionally among all the beneficiaries so that the active

2  beneficiary does not bear the entire burden alone." *Id.*  Accordingly, under Ninth

3  Circuit law, the district court has discretion in common fund cases to choose either

4  the percentage-of-the-fund or the lodestar method. *In re Wash. Pub. Power Supply*

5  *Sys. Sec. Litig.*, 19 F.3d 1291, 1295-96 (9th Cir. 1994).

6      Several courts have, however, expressed frustration with the alternative

7  "lodestar" approach for deciding fee awards, which usually involves wading through

8  voluminous and often indecipherable time records. Commenting on the loadstar

9  approach, Chief Judge Marilyn Hall Patel wrote in *In re Activision Securities*

10 *Litigation*, 723 F.Supp. 1373, 1375 (N.D. Cal. 1989):

12      This court is compelled to ask, "Is this process necessary?" Under a
        cost-benefit analysis, the answer would be a resounding, "No!" Not
13      only do the <u>Lindy Kerr-Johnson</u> analysis consume an undue amount
        of court time with little resulting advantage to anyone, but in fact, it
14      may be in the detriment of the class members. They are forced to wait
        until the court has done a thorough, conscientious analysis of the
15      attorneys' fees petition. Or, class members may suffer a further
        diminution of their fund when a special master is retained and paid
16      from the fund. Most important, however, is the effect the process has
17      on the litigation and the timing of settlement. Where attorneys must
        depend on a lodestar approach, there is little incentive to arrive at an
18      early settlement." *Id.*

20      The percentage approach is preferable to the lodestar because:  (1) it aligns the

21 interests of class counsel and absent class members; (2) it encourages efficient

22 resolution of the litigation by providing an incentive for early, yet reasonable,

23 settlement; and (3) it reduces the demands on judicial resources. *In re Activision*

24 *Securities Litigation*, 723 F. Supp. at 1378-79. The Ninth Circuit now routinely uses

25 the percentage of the common fund approach to determine the award of attorneys'

26 fees. See, e.g., *In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 378-79

27 (9th Cir. 1994) (approving attorneys' fees of 33 1/3% of settlement fund).

28

Class counsel's application for 30% of the Gross Settlement Fund, including costs, is within the range of reasonableness. According to *Newberg*:

> No general rule can be articulated on what is a reasonable percentage of a common fund. Usually 50% of the fund is the upper limit on a reasonable fee award from a common fund in order to assure that the fees do not consume a disproportionate part of the recovery obtained for the class, although somewhat larger percentages are not unprecedented.

(Newberg, § 14:6.)

Class Counsel has borne the entire risk and costs of litigation for several years, all on a pure contingency basis. Rutledge Decl., ¶¶ 109-110. Both parties have engaged in extensive written and informal discovery disputes and motions relating to discovery issues. Specifically, there were complicating issues surrounding Plaintiffs' need to file motions to compel discovery and seek leave from the court to file a First Amended Complaint that required additional litigation. *Id.*, ¶¶ 16-25. Class Counsel has spent a considerable amount of time litigating this case. *Id.*, ¶ 112. Class Counsel's actual fees incurred, with a lodestar multiplier of 1.5, is about equal to the amount of requested fees. *Id.*

The case was initially filed in state court and subsequently removed to federal court. Rutledge Decl., ¶¶ 13, 32. Plaintiffs' initial Complaint only contained nine causes of action and one named defendant. *Id.*, ¶¶ 13-14. After the initial Complaint was filed, Plaintiffs discovered more than 14 related entities were liable. Plaintiffs also discovered evidence that they had worked on public works projects and had prevailing wage claims under state law. Based on these new discoveries, Plaintiffs sought leave from the court to file a First Amended Complaint to add these new defendants and two additional state law claims. This motion was vigorously opposed. Defendants produced over 10,000 pages of documents requiring numerous hours to review and summarize in preparation for class certification.

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, Suite 201
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

Motion for Preliminary Approval -  Case No.: 14CV1246

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, Suite 201
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

1    Once the random sampling was obtained, Class counsel reviewed and analyzed

2  these records with his retained expert. Rutledge Decl., ¶¶ 34, 48-51. Further, a

3  deposition was taken of Plaintiffs' supervisor, whose testimony played a key role in

4  supporting Plaintiffs' claims in mediation. Class counsel drafted and filed a motion to

5  compel further responses to Plaintiffs' written discovery. Class counsel drafted but

6  never filed a half dozen more motions to compel until this matter was removed to

7  federal court. Class Counsel received calls from prospective class members and

8  interviewed dozens of witnesses and class members. *Id.*, ¶ 85.

9    Class Counsel researched and drafted a motion to certify the Class. Although

10  the motion was never filed, Class Counsel aggressively and proactively was moving

11  the case in the direction of certification.

12    The amount of work and time placed into this case warrants approval of Class

13  Counsel fees as requested. Therefore, the attorneys' fees requested are reasonable.

14  The Court should preliminarily approve the requested attorneys' fees and costs,

15  which are justified by the outstanding results achieved, the complexity of the issues,

16  the difficulty of the case, and the great risk undertaken by Class Counsel. The

17  requested attorneys' fees will not be opposed by Defendants, and are well within

18  established guidelines.

19    **b.    Class Counsel Is Well Qualified In These Types of**

20    **Actions.**

21    Class Counsel is experienced in wage and hour class action litigation. He has

22  been successful in prosecuting dozens of wage and hour cases and obtaining class

23  certification in wage and hour class action cases. Rutledge Dec., ¶¶ 98-107. Thus,

24  Class Counsel is sufficiently experienced and qualified to evaluate the class claims

25  and viability of defenses.

26    In the opinion of Class Counsel, the recovery for each class member is well

27  within the standard weekly rate for this type of action, particularly given the risks

28  inherent in further litigation. The settlement is favorable given that Class Members

- 28 -

will be promptly compensated, rather than facing uncertainties inherent in further litigation and waiting for years of litigation to ensue. In addition, during the course of this litigation and subsequent to the agreed upon settlement, Defendants has taken steps to ensure that employees are not getting erroneous pay stubs. Based on all considerations, this settlement is highly favorable and is in the best interests of the Class.

When considered together, these factors support preliminary approval of the proposed class settlement under Rule 23(e) of the Federal Rules of Civil Procedure. Because the settlement is a fundamentally fair, adequate, and reasonable resolution of disputed issues, the Court should grant preliminary approval of the settlement.

## VIII. **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request the Court to preliminarily approve the proposed settlement, certify the Class for settlement purposes, schedule a date for a hearing on Final Approval, and sign the proposed Preliminary Approval Order submitted herewith.

Dated: September 15, 2014

Law Offices of
Thomas D. Rutledge

By:

Thomas D. Rutledge
Attorneys for Plaintiffs

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, Suite 201
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

Motion for Preliminary Approval -  Case No.: 14CV1246

# CERTIFICATE OF SERVICE

I, THOMAS D. RUTLEDGE, the undersigned, am employed in the County of San Diego, State of California; I am over the age of 18 and not a party to the within action; my business address is 3555 Fifth Avenue, Suite 201, San Diego, California 92103.

On September 15, 2014, I served the foregoing document(s) described as:

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

on the interested parties to this action by placing a copy thereof enclosed in a sealed envelope addressed as follows: **See Attached List.**

☒(BY E-FILE )   I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel denoted on the attached Service List, and I hereby certify that I have mailed the foregoing document(s) via the U.S. Postal Service to the non-CM/ECF participants indicated on the attached Service List.

☒(FEDERAL)   I declare I am employed in the office of a member of the bar of this court, at whose direction this service was made.

☐(BY MAIL)   I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service.  This correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business at our Firm's office address in San Diego, California.  Service made pursuant to this paragraph, upon motion of a party served, shall be presumed invalid if the postal cancellation date of postage meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

☐(BY OVERNIGHT DELIVERY SERVICE)  I served the foregoing document by Federal Express, an express service carrier which provides overnight delivery, as follows.  I placed true copies of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed to each interested party as set forth above, with fees for overnight delivery paid or provided for.

☐(BY PERSONAL SERVICE)   I caused such envelope to be delivered by hand to the offices of the above named addressee(s).

☒(BY FACSIMILE)   I caused such documents to be delivered via facsimile to the offices of the addressee(s) at the following facsimile number:

Executed September 15, 2014, at San Diego, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

/S/ Thomas D. Rutledge
THOMAS D. RUTLEDGE

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, Suite 201
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

30 -

# SERVICE LIST

Amanda C. Sommerfeld, Esq.
Monique Ngo-Bonnici, Esq.
Audrey Shen Chui, Esq.
Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, California 90071-1543
Attorneys for Defendants