# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONOVAN LONG, DAVID HORN, and LLOYD CONARD, individuals, individually and on behalf of all similarly situated aggrieved employees,<br><br>Plaintiffs,<br><br>vs.<br><br>STANLEY BLACK & DECKER, INC.; STANLEY ACCESS, INC.; STANLEY SECURITY SOLUTIONS, INC.; STANLEY CONVERGENT SECURITY SOLUTIONS, INC.; AEROSCOUT, INC.; BLACK & DECKER (U.S.) INC.; CRC-EVANS PIPELINE INTERNATIONAL, INC.; EMHART TECHNOLOGIES LLC; FASTENER INNOVATION TECHNOLOGY, INC.; LISTA INTERNATIONAL CORPORATION; POWERS FASTENERS, INC.; SPIRALOCK CORPORATION; STANLEY FASTENING SYSTEMS LP; STANLEY SUPPLY & SERVICES, INC.; STANLEY ACCESS TECHNOLOGIES LLC; and DOES 16 through 50, inclusive,<br><br>Defendants. | CASE NO. 14-CV-1246 JLS (BGS)<br><br>**ORDER: (1) GRANTING MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; AND (2) GRANTING MOTION FOR AN ORDER GRANTING AN AWARD OF ATTORNEYS' FEES, LITIGATION COSTS, AND ENHANCEMENT FEES FOR THE CLASS REPRESENTATIVES**<br><br>(ECF Nos. 21, 22, 23) |

Presently before the Court is Plaintiffs Donovan Long and Lloyd Conrad's ("Plaintiffs") unopposed Motion for Final Approval of Class Settlement. (ECF No. 21.) There have been no objections made to the settlement. Also before the Court is Plaintiffs' unopposed Motion for an Order Granting an Award of Attorneys' Fees, Litigation Costs, and Enhancement Fees for the Class Representatives. (ECF No. 22.) A final approval hearing was held on April 8, 2015. Having considered the motions and the law, the Court **GRANTS** the Motion for Final Approval of Class Settlement and the Motion for an Order Granting an Award of Attorneys' Fees, Litigation Costs, and Enhancement Fees for the Class Representatives.

## BACKGROUND

This case arises out of Defendants' purported failure to: (1) provide compensable drive time, (2) pay overtime wages, (3) pay minimum wages, (4) provide meal periods, (5) provide rest periods, (6) make payments within the required time, (7) provide compliant itemized wage statements, (8) maintain required records in violation of California Labor Code § 1174, and (9) pay prevailing wages. (Mot. for Final Approval 4–5,[1] ECF No. 21-1.) Plaintiffs also seek remedies under the Private Attorney General Act ("PAGA") and related to unfair business practices. (*Id*. at 5.) The Court preliminarily approved the settlement on December 5, 2014. (ECF No. 20.)

## TERMS OF THE PROPOSED SETTLEMENT AGREEMENT

The proposed settlement class ("the Settlement Class," or "the Class") comprises two subclasses. (*See* Mot. for Final Approval 9–10, ECF No. 21-1.) Subclass I, the Field Technician Class, consists of "any individual who was employed by any of the Defendants in the state of California at any time from June 27, 2009 to [October 30, 2014, the scheduled hearing date for the Mot. Prelim. Approval] as a non-exempt Field Technician, Service Technician and/or Installation Technician and/or Installation Technician Helper and/or who holds or held a similar position and worked in the field

---

[1] For ease of reference, all page number cited to are the CM/ECF numbers at the top of the page.

doing construction, service, repair, technical and/or maintenance work." (Decl. of Thomas Rutledge in Supp. of Mot. for Final Approval of Class Settlement Ex. 1 ("Settlement Agreement") ¶ 15 at 24, ECF No. 21-2.) Subclass II, the Wage Statement Class, consists of "any individual who was employed by any of the Defendants in the [s]tate of California at any time from June 27, 2012 to [October 30, 2014, the scheduled hearing date for the Mot. Prelim. Approval] who received at least one paystub from any of the Defendants." (*Id.* at ¶ 36 at 28–29.)

Defendants, without admitting wrongdoing, have agreed to settle the class claims with Plaintiffs for $4,970,000. (Mot. for Final Approval 11, ECF No. 21-1.) This amount includes: "(1) individual settlement payments to each Participating Class Member who submits a Claim Form; (2) Class Representative Enhancement Payments to class representatives Long and Conrad for up to $5,000 each, for their services on behalf of the Class; (3) a $37,500 payment to the Labor and Workforce Development Agency ("LWDA") regarding Plaintiff's PAGA claim; (4) reasonable claims administrator's fees and expenses not to exceed $25,000; and (5) Class Counsel's fees and costs in the amount of $1,491,000." (*Id.*) The Class will receive at least 70% of the Net Settlement Amount, which is about $3.4 million. (*Id.*) About $2.4 million of the Net Settlement Amount will go to the construction workers for unpaid wages (Subclass I) and about $1,025,000 will go to the paystub class (Subclass II). (*Id.*) Each member of Subclass I that submitted a timely claim will receive, on average, $7,965, assuming he or she was employed for the entire class period. (*Id.* at 22.) Each member of Subclass II that submitted a timely claim will receive, on average, $1,280, assuming he or she was employed for the entire class period. (*Id.*) These amounts will increase or decrease depending on how many claims have been filed and the length of employment of each class member. (*Id.*) To date, the number of claims submitted is 80.90% of the Net Settlement Amount, which exceeds the 70% guaranteed payout. (*Id.* at 12; Supplemental Decl. of Abel Morales in Supp. of Mot. for Final Approval of Class Settlement ("Morales Supp. Decl."), ECF No. 23.)

## MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

A threshold requirement for final approval of the settlement of a class action is the assessment of whether the Class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of one of the types of class actions enumerated in subsection (b). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019, 1022 (9th Cir. 1998). No facts that would affect these various requirements have changed since this Court preliminarily approved the Class on December 5, 2014. Accordingly, this order incorporates by reference the analysis under Rules 23(a) and (b) set out in the Preliminary Approval Order. (*See* Prelim. Approval Order 3–9, ECF No. 20.)

Moreover, before granting final approval of a class-action settlement, the Court determines whether notice to the Class was adequate. *Hanlon*, 150 F.3d at 1025. "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Id*. This Court preliminarily approved the parties' proposed notice plan ("the Notice Plan"). (*See* Prelim. Approval Order 14–15, ECF No. 20.) In conjunction with the Motion for Final Approval, Abel Morales, a case manager at CPT Group, Inc., the Independent Claims Administrator selected by the parties, submitted a declaration detailing the actions CPT Group, Inc. has taken with regard to this class action, including providing notice to the class members. (*See generally* Decl. of Abel Morales in Supp. of Mot. for Final Approval of Class Settlement ("Morales Decl."), ECF No. 21-3.) A review of Morales' declaration and the attached exhibits reveals that CPT Group, Inc. provided notice in accordance with the approved Notice Plan. Accordingly, the Court finds that adequate notice of the Settlement was provided to the Class.

Finally, under Federal Rule of Civil Procedure 23(e)(2), where the proposed settlement would bind class members, the court may approve it only after a hearing and based on a finding that it is fair, reasonable, and adequate. The Ninth Circuit has enumerated various factors that the court should consider in determining whether a proposed settlement meets the fair, reasonable, and adequate standard, including, *inter alia*: (1) the strength of plaintiffs' case; (2) the risk, expense,

complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; (8) and the reaction of the class members to the proposed settlement. *Hanlon*, 150 F.3d at 1026. This determination is committed to the sound discretion of the trial judge. *Id*

The parties engaged in extensive settlement discussions after 11 months of discovery and multiple telephonic meetings. (Mot. for Final Approval 14, ECF No. 21-1.) The parties ultimately reached settlement in this matter with the help of a mediator, Mark Rudy, Esquire. (*Id*. at 15.) Plaintiffs and Class Counsel concluded that Mr. Rudy's proposal was fair and reasonable, and settling on the terms he proposed was in the best interest of the Plaintiffs and the Class. (*Id*. at 16.) Defendants similarly concluded that settling according to Mr. Rudy's terms was in their best interest, and that his proposal was fair and reasonable. (*Id*.) The Settlement Agreement reached by the parties "is the result of extensive, arms' length negotiations." (*Id*.) The Court addresses the relevant *Hanlon* factors in turn.

**I.   Strength of Plaintiffs' Case and Risk, Expense, Complexity and Likely Duration of Further Litigation**

The instant case involves complex wage and hour claims, and the Class consists of hundreds of current and former employees. (Mot. for Final Approval 16, ECF No. 21-1.) Furthermore, Defendant' business model has increased the complexity of the issues involved in this case. (*See id*. at 17–18.) Class Counsel believes Plaintiffs could prevail on the claims alleged in this case; however, Defendants have asserted, and continue to assert, various defenses such that continued litigation could take months, if not years, to complete. (*Id*. at 18, 19.) Settlement eliminates the risk that Plaintiffs may not prevail. Here, full litigation of the issues would be a timely and costly endeavor, and would not necessarily yield any benefits to the Class. Accordingly, the Court finds that these factors weigh in favor of approving the settlement.

## II. Risk of Maintaining Class Action Status Throughout Trial

Plaintiffs explain that notwithstanding their arguments for class certification, Defendants would have opposed class certification in regard to their commute claim, their Labor Code § 203 claim, and their Labor Code § 226 claim. (*Id*. at 19–20.) Defendants also would have filed motions for decertification and summary judgment in regard to the meal and rest period clams, and the prevailing wage claims. (*Id*. at 20.) Defendants' non-objection to certification for the purposes of settlement leads the Court to find that this factor favors settlement.

## III. Amount Offered in Settlement

The Settlement Agreement provides "monetary benefits to the Class Members that are superior to those recovered in many similar wage and hour class actions." (*Id*. at 21.) On average, members of Subclass I will receive $7,965 and members of Subclass II will receive $1,280. (*Id*. at 22.) The entire Class is receiving its monetary relief relatively quickly as a result of the settlement reached by the parties. (*Id*. at 21.) Moreover, the Class is receiving equitable relief because the Settlement Agreement requires Defendants to fix the problems with their paystubs. (*Id*.) In light of the benefits the Class is set to receive, the Court finds that this factor weighs in favor of settlement.

## IV. Extent of Discovery Completed and Stage of Proceedings

The parties have engaged in discovery, "including the production and review of over 10,000 pages of documents." (*Id*. at 14, 18.) The parties held various telephonic meetings and "voluntarily exchanged voluminous and detailed information relating to the Class." (*Id*. at 14.) Additionally, Class Counsel has conducted telephonic surveys of and met with class members. (*Id*.) Plaintiffs also employed experts to assist in evaluating damages and liability, and handling the wage claims. (*Id*. at 18–19.) It appears that the parties had extensive information going into settlement negotiations and, therefore, the Court finds that this factor favors approving the settlement.

## V. Experience and Views of Counsel

The parties and their respective counsel have recommended accepting the

Settlement Agreement because both find the agreement fair, reasonable, and adequate. (*Id*. at 22.) Furthermore, Class Counsel is not only familiar with the facts and circumstances of this case, but, more generally, "is experienced in class action litigation and wage and hour matters." (*Id*.; *see* Decl. of Thomas Rutledge in Supp. of Mot. for Final Approval of Class Settlement ("Rutledge Decl") ¶¶ 99–125, ECF No. 21-2.) Accordingly, the Court concludes that this factor weighs in favor of approving the settlement.

## VI. Reaction of the Class Members to the Proposed Settlement

Subclass I, the Field Technician Class consists of 317 members, and Subclass II, the Wage Statement Class, consists of 1105 class members. (Mot. for Final Approval 10, ECF No. 21-1.) Only one class member has opted out of the settlement,[2] and no class members have filed objections to the Settlement Agreement. (*Id*.) The Court finds that this factor favors approving the settlement.

## VII. Balancing

Given that all of the *Hanlon* factors weigh in favor of approval of the Settlement Agreement, the Court **GRANTS** the Motion for Final Approval.

## MOTION FOR ATTORNEY'S FEES, COSTS, AND ENHANCEMENT FEES

## I. Attorneys' Fees

Federal Rule of Civil Procedure 23(h) permits a court to award reasonable attorneys' fees "authorized by law or by the parties' agreement." In a diversity suit, the award of attorneys' fees is governed by state law. *See Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 829 (9th Cir. 2009) (citation omitted); *Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1024 (9th Cir. 2003) (citation omitted).

"[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." *PLCM Group v. Drexler*, 22 Cal. 4th 1084, 1095. "The reasonable hourly rate is that

---

[2] The one opt-out submitted to CPT Group, Inc. did not include the last four digits of the class member's social security number; accordingly, the opt-out is considered defective. (Morales Decl. ¶ 22, ECF No. 21-3.)

prevailing in the community for similar work." *Id*. The lodestar figure presented by the party requesting fees may "be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided." *Id*. (citing *Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977)). Some of the factors a court considers when deciding whether to adjust the lodestar are: "(1) the novelty and difficulty of the questions involved, and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; [and ] (3) the contingent nature of the fee award. . . ." *Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977). Courts in the Ninth Circuit have also considered the results achieved for the class members when determining reasonable fee awards. *See In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1046 (2008).

> The Supreme Court has held that,
>
> [t]o inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence–in addition to the attorney's own affidavits–that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.

*Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). Here, Class Counsel requests $1,491,000, as provided for in the Settlement Agreement. (Mot. for Fees 7, ECF No. 22-1.) The amount of attorneys' fees agreed to in the Settlement Agreement is equivalent to a lodestar of $1,238,319.30 and multiplier of approximately 1.204. (*Id*. at 11–12.) The lodestar consists of the following:

| Name | Position | Rate | Hours | Lodestar |
| --- | --- | --- | --- | --- |
| Thomas D. Rutledge | Partner (graduated 1995) | $695 | 1310.83 | $911,026.85 |

| Amanda Hutchins | Associate (graduated 2014) | $295 | 795 | $234,525.00 |
|---|---|---|---|---|
| Paralegal 1 | N/A | $95 | 696.5 | $66,167.50 |
| Paralegal 2 | N/A | $95 | 280 | $26,600.00 |
| **TOTAL** | | | **3082.33** | **$1,238,319.30** |

Class Counsel argues that the rates outlined above are reasonable in light of the Southern California legal market, and are consistent with sources, "such as the 2014 Laffey Matrix and the 2014 National Law Journal survey of fees." (*Id*. at 21; *see also* Decl. of Thomas Rutledge in Supp. of Mot. for an Award of Attorneys' Fees, Costs, and Enhancement Fees for the Class Representatives ("Rutledge Decl in Supp. of Fees") Exs. 2 and 3 at 31–38, ECF No. 22-2.) Class Counsel states that per the Laffey Matrix, a reasonable rate for attorneys in California with 20 years of experience, such as Mr. Rutledge, is $771, and a reasonable rate for attorneys in California with a couple of years of experience, like Ms. Hutchins, is $320. (Mot. for Fees 21–22, ECF No. 22-1.) The National Law Journal provides for similar national rates. (*Id*. at 22.) Class Counsel notes that the rates requested are less than the stated averages. (*Id*.) While the evidence submitted by Class Counsel does not address attorneys fees in *this community* specifically; the Court will consider the California Laffey Matrix persuasive. The Court also takes into account that the fees requested by Class Counsel are lower than the averages stated in the evidence submitted and, therefore, finds that Class Counsel's requested fees are reasonable.

Class Counsel has included for the Court's review an itemized time sheet for Mr. Rutledge showing that the number of hours he expended is reasonable. (Rutledge Decl in Supp. of Fees Ex. 1 at 18–29, ECF No. 22-2.) In light of the complexity of this case, the effort required to reach the Settlement Agreement, and the success achieved for the Class, the Court agrees that Class Counsel expended a reasonable number of hours on this case.

Class Counsel requests that the Court uphold the Settlement Agreement reached by the parties. Class Counsel explains that "Defendants agreed not to object to an award of 30% of the settlement amount for attorneys' fees and costs." (Mot. for Fees 22, ECF No. 22-1.) This agreement was the result of "arms-length negotiations and fairly reflects the marketplace value of the services rendered by Class Counsel in this case." (*Id*. at 23.) 30% of the settlement amount is equal to the lodestar multiplied by approximately 1.204. Therefore, Class Counsel requests that the Court multiply the lodestar by approximately 1.204 and award $1,491,000 in attorneys' fees.[3] The Court addresses each of the factors involved in deciding whether to enhance the lodestar.

### A.   *Results Achieved*

Defendants have agreed to settle this case for $4.97 million. (*Id*. at 13.) The Settlement Agreement provides for significant monetary benefits to the Class, which "are superior to those recovered in many similar wage and hour class actions." (*Id*. at 12; *see* Terms of the Settlement Agreement *supra* pp. 2–3.) The Class is also benefitting from the relatively early settlement of this case. (Mot. for Fees 12, ECF No. 22-1.) Moreover, Defendants will fix the issues with their paystubs. (*Id*.) The Settlement Agreement was the result of many months of litigation, discovery, expert evaluations, and the help of an independent mediator. (*See id.*) Class Counsel determined "that the total potential damages were about $13,500,000.00," such that "a total settlement of $4.97 million represents about 36.8% of the total potential damage recovery in this action." (*Id*. at 12, 13.) Class Counsel obtained significant results for the Class and, therefore, the Court finds that this factor weighs in favor of applying a multiplier to the lodestar.

### B.   *Novelty and Difficulty of the Questions Involved and Skill Displayed*

This case involves complex wage and hour issues that deal with "California's

---

[3] Class Counsel, in the Motion for an Order Granting an Award of Attorneys' Fees, Litigation Costs, and Enhancement Fees for the Class Representatives, asks the Court to apply a multiplier of .15 to the lodestar; however, the Court has determined that the appropriate multiplier to apply in order to reach the amount of attorneys' fees agreed to by the parties in the Settlement Agreement is approximately 1.204.

prevailing wage law and overtime in connection with unpaid commute time, among other things." (*Id*. at 13.) Class Counsel had to distinguish between various types of workers, such as electricians, signalmen, and sheet metal workers, and determine the prevailing wage rate for each assignment. (*Id*.) Prevailing wage rates also had to be determined for various counties. (*Id*. at 14.) Class Counsel conducted "dozens of telephonic surveys with Class Members," and hired two experts to assist Class Counsel in reaching its conclusions on the rates owed to the Class. (*Id*.) In addition to the complex legal issues, Defendants' business model added to the difficulty of the case, and Class Counsel had to amend its complaint to add new defendants, thereby increasing the complexity and risk involved with the case. (*Id*. at 14–15.)

Class Counsel asserts that "[t]his Settlement was possible only because Class Counsel was able to make convincing arguments it could potentially prevail on the legal issues regarding commute time, meal periods, rest periods, failing to pay prevailing wages and overtime, achieve class certification, and overcome difficulties in proof as to monetary relief." (*Id*. at 15.) This is particularly true given the risk involved with the litigation including Defendants' numerous potential defenses and arguments regarding class certification. (*See id*. at 15–17.) Class Counsel dealt with issues that are rarely litigated, such as prevailing wage claims; faced prestigious, capable and tenacious opposing counsel; and spent substantial time vigorously working for Plaintiffs. (*Id*. at 17–19.) Class Counsel showed extreme competence in negotiating this Settlement Agreement and, therefore, the Court finds that this factor favors applying a multiplier to the lodestar.

### C. Extent to which Nature of Litigation Precluded Other Employment by Attorneys

Handling and prosecuting this case required Class Counsel's concerted and dedicated effort, such that Class Counsel was unable to take other cases while litigating this case. (*Id*. at 19.) Accordingly, the Court finds that this factor weighs in favor of applying a multiplier to the lodestar.

**D.     *Contingent Nature of the Fee Award***

Class Counsel "litigated this case on a contingent basis with all of the concomitant risk factors inherent in such an uncertain undertaking." (*Id*. at 19.) In light of the risks involved with this case, including certifying the class and subclasses, Class Counsel litigated this without any degree of certainty that they would be paid. (*See id*. at 20.) Further, Class Counsel advanced all costs involved with this litigation, totaling more than $75,000, which they would not have recovered if Plaintiffs lost the case. (*Id*.) In light of the contingent nature of the work undertaken by Class Counsel, the Court concludes that this factor favors applying a multiplier to the lodestar.

**E.     *Balancing***

Given that all of the aforementioned factors favor applying a multiplier to the lodestar, the Court will multiply the lodestar by approximately 1.204 such that Class Counsel is awarded $1,491,000, the amount agreed to by the parties in the Settlement Agreement.

**II.     Litigation Costs**

The Settlement Agreement allows Plaintiffs to recover litigations costs. (*Id*. at 23.) Class Counsel seeks recovery of the costs it advanced and will "absorb the costs into their overall recovery of funds." (*Id*.) Plaintiffs seek the following:

| Expense | Cost |
| --- | --- |
| State Court Filing Fees | $1,380.68 |
| Electronic Legal Research & Pacer Costs | $82.34 |
| Service Fees | $2,050.00 |
| Expert Fees (Juan Garza) | $70,562.89 |
| Class Action Web design | $1,000.00 |
| Consultant Fee (Steve Wattenburg) | $4,000.00 |
| Travel, Meals & Lodging for Mediation | $1,017.87 |
| Mediator's Fee (Mark Rudy) | $6,000.00 |
| Deposition Transcripts | $692.50 |

| Copy & Scanning Costs | $880.00 |
| Estimated Postage | $350.00 |
| **SUB-TOTAL** | **$88.016.28** |

In addition to the aforementioned costs, the Settlement Agreement provides for a payment of up to $25,000 to CPT Group, Inc., which Plaintiffs ask the Court to award in full. (*Id*. at 24.) The instant motion includes various exhibits detailing the costs involved with litigating this case, such as invoices and itemized receipts. Accordingly, the Court concludes that the litigation costs associated with this case are reasonable and the Court orders payment of $25,000 to CPT Group, Inc.

### III. Enhancement Fees for the Class Representatives

The Settlement Agreement also allows for an enhancement fee of $5,000 to be paid to each of the two class representatives, Plaintiffs Long and Conrad. (*Id*. at 24.) Incentive awards are "fairly typical" discretionary awards "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (citations omitted). In deciding whether to give an incentive award, the Court may consider, *inter alia*:

> 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (citations omitted).

Plaintiffs Long and Conrad "performed their duties to the Class admirably and without hesitation." (*Id*.) Plaintiffs Long and Conrad provided Class Counsel information that led to discovery requests, documents they received from Defendants, and names of essential witnesses. (*Id*. at 24–25.) They also "assisted in the preparation

of the factual portion of the mediation brief and the Certification Motion." (*Id*. at 25.) As the class representatives, Plaintiffs assumed the risk that they may be held liable for costs had they lost. (*Id*.) Further, they "will have the lifetime stigma of having the reputation of their having to sue their former employer to get wages to which they are owed." (*Id*.) In light of the time and effort expended by the class representatives, the Court finds that each is entitled to an enhancement fee of $5,000.

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Plaintiff's Motion for Final Approval of Class Settlement and **GRANTS** Plaintiff's Motion for an Order Granting an Award of Attorneys' Fees, Litigation Costs, and Enhancement Fees for the Class Representatives. The Court **ORDERS PAYMENT** of $1,491,000 to Class Counsel; $25,000 to CPT Group, Inc., and enhancement fees of $5,000 each to Plaintiffs Long and Conrad.

The Court **FURTHER ORDERS**:

**1.** Defendants, Class Representatives, and all Class Members, as set forth in the Settlement Agreement, shall be bound by the terms of the Settlement Agreement and all determinations and judgments in the litigation concerning the settlement.

**2.** The claims of all individuals not specifically included in the Settlement Agreement are hereby dismissed with prejudice.

**3.** Defendants are hereby forever discharged from all Released Claims a defined in the Settlement Agreement.

**4.** Defendants are hereby ordered to pay the settlement awards to the Class Representatives and Class Members, the Class Representatives' incentive awards, Class Counsel's attorneys' fees and expenses, and Claims Administrator's fees in accordance with the terms of the Settlement Agreement.

**5.** The claims of Plaintiffs and those of the members of the Settlement Class in the Settlement Agreement, against Defendants are dismissed with prejudice and without costs (other than what has been provided for in the Settlement Agreement).

**6.** Each Class Member is bound by the Settlement Agreement and by any judgments in this action concerning the class claims, including any judgments entered in connection with the Settlement Agreement.

**7.** The Court retains jurisdiction over the interpretation, enforcement, and implementation of the Settlement Agreement and of this Order.

**IT IS SO ORDERED**.

DATED: April 23, 2015

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge